# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

CHARLES DILLINGHAM,

                Petitioner,           :     Case No. 1:13-cv-468

    - vs -                        Chief Judge Susan J. Dlott
                                   Magistrate Judge Michael R. Merz

WARDEN, CHILLICOTHE CORRECTIONAL
  INSTITUTION,
                              :
                Respondent.

===

# REPORT AND RECOMMENDATIONS

===

This habeas corpus case is before the Court for decision on the merits, considering the Petition (Doc. No. 8), the Return of Writ ("Return," Doc. No. 12), and the Traverse (Doc. No. 18). On May 29, 2014, Petitioner filed a Supplemental Traverse (Doc. No. 31) without leave of Court which will only be considered to the extent it reiterates or emphasizes arguments already made.

Petitioner brought this action *pro se* under 28 U.S.C. § 2254 pleading four grounds for relief:

> **Ground One:** The trial court abused its discretion by not granting an acquittal when the evidence is insufficient to prove a guilty conviction beyond a reasonable doubt in violation of Petitioner's Fifth and Fourteenth Amendments to the United States Constitution.

> **Ground Two:** The court abused its discretion when it did not merge allied offenses of similar import for felonious assault and weapons under disability in violation of Petitioner's Fifth and Fourteenth Amendments to the United States Constitution.

**Ground Three:**  The court abused its discretion by denying the motion for new trial based on the grounds of newly discovered evidence in violation of the Fifth, Sixth, and Fourteenth Amendment[s] to the United States Constitution.

**Ground Four:**  Trial counsel provided ineffective assistance of counsel by failing to investigate witnesses and information provided by appellant.

(Petition, Doc. No. 8.)

## Procedural History

Dillingham was indicted in Butler County on four counts of felonious assault with firearm specifications and one count of having weapons under disability, all arising from the shooting of two people at the Grub Pub in Hamilton, Ohio, on October 15, 2010.  He was convicted at trial and sentenced to fourteen years imprisonment.  He appealed to the Twelfth District Court of Appeals which affirmed his conviction.  *State v. Dillingham,* 2011-Ohio-6348, 2011 Ohio App. LEXIS 5210 (12th Dist. Dec. 12, 2011)("*Dillingham I*").  The Ohio Supreme Court declined to exercise jurisdiction over an appeal.  *State v. Dillingham*, 132 Ohio St. 3d 1461 (2012).

Dillingham filed an application to reopen his direct appeal under Ohio R. App. P. 26(B), claiming his appellate attorney was ineffective for failing to allege ineffective assistance by trial counsel in that attorney's not calling Kimberly Roberson as a witness.  The Twelfth District denied the application.  *State v. Dillingham*, Case No. CA2011-03-043 (12th Dist. May 1, 2012)(unreported; copy at Return, Doc. No. 12-1, Ex. 19, PageID 272).

Dillingham also filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 which the trial court denied.  Two days after the denial, he filed a motion for leave to

file a delayed motion for new trial which the trial court also denied.  Dillingham appealed both of those denials, but they were affirmed.  *State v. Dillingham*, 2012-Ohio-5841, 2012 Ohio App. LEXIS 5018 (12th Dist. Dec. 10, 2012)("*Dillingham II*").  The Ohio Supreme Court declined to exercise jurisdiction over an appeal (Return, Doc. No. 12-1, Ex. 41, PageID 389).

Dillingham asked the Twelfth District to reconsider its opinion on the new trial appeal.  It did so, but eventually affirmed the denial.  *State v. Dillingham*, 2013-Ohio-2050, 2013 Ohio App. LEXIS 1951 (12th Dist. May 20, 2013)("*Dillingham III*").  The Supreme Court of Ohio again declined to consider an appeal.  *State v. Dillingham,* 136 Ohio St. 3d 1495 (2013).

Dillingham then timely filed the instant Petition.

# Analysis

## Ground One:  Insufficient Evidence

In his First Ground for Relief, Dillingham claims there was insufficient evidence to convict him.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in
> the light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas

corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and

then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v.*

*Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of
> judicial deference. First, on direct appeal, "it is the responsibility of
> the jury -- not the court -- to decide what conclusions should be
> drawn from evidence admitted at trial. A reviewing court may set
> aside the jury's verdict on the ground of insufficient evidence only
> if no rational trier of fact could have agreed with the jury."
> *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d
> 311, 313 (2011) (*per curiam*). And second, on habeas review, "a
> federal court may not overturn a state court decision rejecting a
> sufficiency of the evidence challenge simply because the federal
> court disagrees with the state court. The federal court instead may
> do so only if the state court decision was 'objectively
> unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___,
> 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam)*.

Dillingham raised this claim on direct appeal as his first assignment of error and the

Twelfth District decided it as follows (along with the manifest weight of the evidence issue

which does not present a federal constitutional question):

> **[*P5]** Assignment of Error No. 1:
>
> **[*P6]** "THE TRIAL COURT ERRED TO THE PREJUDICE OF
> APPELLANT IN OVERRULING HIS MOTIONS FOR
> ACQUITTAL AND IN ENTERING GUILTY VERDICTS
> CONTRARY TO APPELLANT'S RIGHT TO DUE PROCESS
> UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE
> UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE
> I OF THE OHIO CONSTITUTION."
>
> **[*P7]** Assignment of Error No. 2:
>
> **[*P8]** "THE TRIAL COURT ERRED TO THE PREJUDICE OF
> APPELLANT IN ENTERING GUILTY VERDICTS WHERE
> SAID VERDICTS WERE CONTRARY TO THE MANIFEST
> WEIGHT OF THE EVIDENCE."

**[\*P9]** In his first assignment of error, appellant argues that the trial court erred by denying his Crim.R. 29(C) motion for acquittal because the state provided insufficient evidence to support his convictions. Appellant also argues in his second assignment of error that his convictions were against the manifest weight of the evidence. Specifically, appellant claims that the state did not prove beyond a reasonable doubt that he was the shooter because video surveillance tapes showing the shooting were unclear and none of the state's witnesses were able to provide an adequate identification of appellant.

**[\*P10]** As this court has previously stated, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Wilson,* Warren App. No. CA2006-01-007, 2007 Ohio 2298, ¶35; *State v. Urbin,* 148 Ohio App.3d 293, 2002 Ohio 3410, ¶31, 772 N.E.2d 1239. In turn, while a review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct concepts, this court's determination that appellant's conviction was supported by the manifest weight of the evidence will be dispositive of the issue of sufficiency. *State v. Rigdon,* Warren App. No. CA2006-05-064, 2007 Ohio 2843, ¶30, citing *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541; see, e.g., *State v. Rodriguez,* Butler App. No. CA2008-07-162, 2009 Ohio 4460, ¶62.

**[\*P11]** A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *State v. Clements,* Butler App. No. CA2009-11-277, 2010 Ohio 4801, ¶19. A court considering whether a conviction is against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of the witnesses. *State v. Hancock,* 108 Ohio St.3d 57, 2006 Ohio 160, ¶39, 840 N.E.2d 1032; *State v. Lester,* Butler App. No. CA2003-09-244, 2004 Ohio 2909, ¶33; *State v. James,* Brown App. No. CA2003-05-009, 2004 Ohio 1861, ¶9. However, while appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, these issues are primarily matters for the trier of fact to decide since it is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence. *State v. Gesell,* Butler App. No. CA2005-08-367, 2006 Ohio 3621, ¶34; *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Therefore, the question upon review is whether in resolving conflicts in the evidence, the trier of

fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Good*, Butler App. No. CA2007-03-082, 2008 Ohio 4502, ¶25; *State v. Blanton*, Madison App. No. CA2005-04-016, 2006 Ohio 1785, ¶7.

**[\*P12]** To find appellant guilty of felonious assault in violation of R.C. 2903.11(A)(1) and (2), the state was required to prove appellant, "knowingly" "cause[d]" "serious physical harm to another" and "cause[d] or attempted][sic] to cause physical harm to another" "by means of a deadly weapon or dangerous ordinance." To prove appellant had a weapon while under a disability in violation of R.C. 2923.13(A)(3), the state was required to prove appellant, "knowingly acquired][sic], ha[d], carr[ied], or use[d] any firearm" and he had been convicted of "any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." "Firearm," as defined by R.C. 2923.11(B)(1) "means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant."

**[\*P13]** At trial, the prosecution introduced video surveillance tapes from the Grub Pub that captured the shooting. The tapes were a compilation of the recordings made by the Pub's many cameras situated throughout the property. Several of the prosecution witnesses used these videos to help explain their testimony. One of these witnesses was Shawn Fryman, a police officer for the city of Hamilton who was the responding officer to the October 15 shooting. Fryman testified that earlier in the night he had been dispatched to appellant's house and he had spent four hours with the appellant. After arriving at the Grub Pub following the shooting, Fryman reviewed the videos and initially identified appellant as the shooter based on the similar stature and gait. Fryman further identified appellant as the shooter based on his knowledge of appellant for four and one-half years, the shooter's facial features, the similar type, color, and condition of the vehicle, and the proximity of the shooter's escape route to appellant's home.

**[\*P14]** Also at trial, Khaleim Waver and Danyell Stiehl testified to the injuries they sustained from the Grub Pub shooting. Waver stated that he was shot multiple times and was not able to see who shot him because his back was turned to the shooter. Stiehl also spoke about the gunshot wound she endured and her inability to make an identification because she was also not facing the shooter.

**[\*P15]** Further Natasha Ness, the Grub Pub bartender and nighttime manager, testified that she observed appellant in the bar

shortly before the shots were fired. Ness used the video to identify appellant as the shooter. Ness testified that she recognized appellant in the video while he was in the Grub Pub. She then stated that she could see where appellant left the Pub, went outside, and performed the shooting. Ness identified appellant as the shooter based on the similarities between the facial features, shape of head, stature, and body movement. She admitted that she would not be able to identify appellant in the video if she had not seen him in person that night. Ness is familiar with appellant because she has been acquainted with him through her employment at the Grub Pub for four years. Ness also recognized the shooter's white vehicle shown in the video as appellant's car because both automobiles are the same color and style.

**[\*P16]** Additionally, Detective Patrick Erb of the Hamilton City Police Department testified he recognized appellant and his car on the video. Erb began focusing on appellant when he learned from Fryman that the police were dispatched to appellant's house earlier in the night and it was suspected he was at the Grub Pub. While investigating the shooting, Erb spoke with appellant who, although denying he was the shooter, admitted that he was at the bar during the time of the shooting and left shortly after he heard gunshots. While appellant was a suspect, Erb waited until October 21 to arrest appellant for the shooting so he could build a stronger case. Erb identified appellant as the shooter in the video because of appellant's statements placing him at the bar and the similarities between the car and facial features of appellant and the shooter. Lastly, at the close of the prosecution's case, appellant stipulated that he had two felony convictions that involved the trafficking of cocaine.

**[\*P17]** In his defense, appellant called his nephew, O'Brian Jarrett, who was at the Grub Pub during the shooting. Jarrett testified that he saw the shooter earlier in the night at the bar and he was wearing different clothing than that of appellant. He further stated that moments after he heard gunfire in the parking lot, he saw the shooter running away. However, the court found Jarrett's testimony to be "incredible." Initially when Jarrett was stating what occurred that night he was testifying without the aid of photographs or the surveillance tape. When he was presented with still pictures of the surveillance video, Jarrett identified appellant as the shooter. After appellant's physical reaction to Jarrett's testimony, Jarrett recanted his identification. [FN 1 The court noted on the record "that the defendant appears to be communicating, at least with hand gestures, to the witness that is testifying."]Further, Jarrett stated that the shooter in the video was

a complete stranger to him despite the fact that the video shows the shooter leaning on his back. Jarrett also acknowledged that the shooter's car in the video is missing the same hubcap as appellant's car.

**[\*P18]** After a thorough review of the record, we cannot say the court clearly lost its way by finding appellant guilty of two counts of felonious assault and one count of having weapons while under a disability for his role in the October 15, 2010 shooting so as to create a manifest miscarriage of justice requiring appellant's convictions to be reversed. As noted above, multiple witnesses, including Ness who physically saw appellant moments before the shooting, identified appellant as the shooter from the video. These witnesses based their identification on the similarities between the shooter's facial features, stature, car, and the escape route taken by the shooter that is the logical route to the appellant's home. Courts have found that identifications from video surveillance tapes are enough to survive manifest weight and sufficiency of the evidence challenges. See *State v. Reading,* Licking App. No. 07-CA-83, 2008 Ohio 2748, ¶23-26 (Reasoning that identification from two persons based on their knowledge of the defendant's appearance was enough to support the conviction and was not against the manifest weight of the evidence despite the fact that those persons did not personally see the defendant commit the crime); *State v. Smith,* Cuyahoga App. No. 92561, 2009 Ohio 5010 (Finding that the video evidence of defendant stealing pharmaceutical totes was enough to convict defendant of crime and was not against the manifest weight of the evidence). Further, appellant admitted to Erb that he was present at the Grub Pub during the time of the shooting. Lastly, the evidence shows that appellant knowingly used a firearm on October 15 when he had been convicted of a prior felony offense involving a drug of abuse. The trier of fact, which has the primary responsibility of weighing the evidence and assessing the credibility of witnesses, found this evidence sufficient and reliable to prove that the appellant committed two counts of felonious assault and one count of having weapons while under a disability. Therefore, because appellant's .[sic]convictions were not against the manifest weight of the evidence, we necessarily conclude that the state also presented sufficient evidence to support the convictions. Accordingly, appellant's first and second assignments of error are overruled.

*Dillingham I*, 2011-Ohio-6348.

In his Traverse, Dillingham argues at length about the weaknesses or limitations on

testimony of the State's witnesses. However, these are all arguments properly addressed to the finder of fact, in this case the trial judge sitting without a jury. Under the AEDPA, this Court owes deference to both the trial judge and to the court of appeals' consideration of the trial judge's decision. The Twelfth District applied the correct federal standard[1] and its application is not objectively unreasonable. The First Ground for Relief should be dismissed with prejudice.

**Ground Two: Double Jeopardy**

In his Second Ground for Relief, Dillingham claims that his conviction for having weapons under disability should have been merged with his felonious assault convictions under Ohio Revised Code § 2941.25 and that failure to do so violated his rights under the Double Jeopardy Clause.

Respondent asserts that this Court does not have jurisdiction to review the correctness of the Ohio courts' construction of Ohio Revised Code § 2941.25 and, alternatively, that this claim was not presented as a federal constitutional claim to the Ohio courts (Return, Doc. No. 12, PageID 75-80.)

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165(1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717

---

[1] Petitioner relies on case authority from the Seventh and Ninth Circuits. However, it is only Supreme Court case law that counts for 28 U.S.C. §2254(d)(1) purposes.

(1969). The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.") The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself. *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), *citing Albernaz*. "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe*, 708 F.3d at 697, *citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

Respondent is technically correct that presenting an allied offenses claim under Ohio Revised Code § 2941.25 is not the same as presenting a Double Jeopardy claim under the Fourteenth Amendment and indeed Dillingham's appellate counsel did not mention double jeopardy in arguing this claim in the Twelfth District (Appellant's Brief, Return, Doc. No. 12-1, Ex. 10, PageID 171-76). Instead, Dillingham argued his Third Assignment of Error in terms of the recently decided. *State v. Johnson*, 128 Ohio St. 3d 153 (2010)(cited by Dillingham in its slip opinion form). However, the Supreme Court of Ohio held in *Johnson* that Ohio Rev. Code §

"2941.25 is a prophylactic statute that protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions." *Id.* at ¶ 45.[2] This Court should therefore bypass the procedural default question and decide this claim on the merits.

The protection offered by Ohio Revised Code § 2941.25 is broader than that provided by the Double Jeopardy Clause. That is, the State can violated 2941.25 without violating the Double Protection Clause. However, if the State has not violated 2941.25, *a fortiori* it has not violated Double Jeopardy.

The Twelfth District decided this claim under *Johnson, supra*:

[*P19] Assignment of Error No. 3:

[*P20] "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING HIS MOTION TO MERGE ALLIED OFFENSES OF SIMILAR IMPORT AND FOR IMPOSING MULTIPLE SENTENCES FOR SAID ALLIED OFFENSES."

[*P21] In his third assignment of error, appellant argues that the trial court erred by failing to merge his conviction for having a weapon while under a disability with the felonious assault conviction. In support of this argument, appellant claims that both offenses were committed by the same conduct of having and using the firearm to commit the felonious assault. Appellant also argues that the animus, to commit physical harm, was the same for both offenses.

[*P22] Ohio prohibits the imposition of multiple punishments for the same criminal conduct pursuant to R.C. 2941.25. *State v. Brown*, Butler App. No. CA2009-05-142, 186 Ohio App. 3d 437, 2010 Ohio 324, ¶7, 928 N.E.2d 782. The statute provides for the following:

[*P23] "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

---

[2] A long section of the Traverse is devoted to arguing that *Johnson* should be applied retroactively. But *Johnson* was already decided when the Twelfth District decided this case and it applied *Johnson*. There is no need to consider the retroactivity question.

**[\*P24]** "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**[\*P25]** In *State v. Johnson*, 128 Ohio St.3d 153, 2010 Ohio 6314, 942 N.E.2d 1061, the Ohio Supreme Court established a new two-part test to determine whether offenses are allied offenses of similar import under R.C. 2941.25. Id. at ¶46-52; *State v. Craycraft*, Clermont App. Nos. CA2009-02-013, CA2009-02-014, 193 Ohio App. 3d 594, 2011 Ohio 413, ¶11, 953 N.E.2d 337. Under this new test, courts must first determine "whether it is possible to commit one offense and commit the other with the same conduct." (Emphasis deleted.) *Johnson* at ¶48; *State v. McCullough*, Fayette App. Nos. CA2010-04-006, CA2010-04-008, 2011 Ohio 992, ¶14. In making this determination, it is not necessary that the commission of one offense would always result in the commission of the other, but instead, the question is simply whether it is possible for both offenses to be committed with the same conduct. *Craycraft* at ¶11, citing *Johnson* at ¶48; *State v. Lanier*, Hamilton App. No. C-080162, 192 Ohio App. 3d 762, 2011 Ohio 898, ¶4, 950 N.E.2d 600.

**[\*P26]** If it is found that the offenses can be committed by the same conduct, courts must then determine "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Johnson* at ¶49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008 Ohio 4569, ¶50, 895 N.E.2d 149. If both questions are answered in the affirmative, the offenses are allied offenses of similar import and must be merged. *Blanda*, 2011 Ohio 411 at ¶15, citing *Johnson* at ¶50. However, if the commission of one offense will never result in the commission of the other, "or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R .C. 2941.25(B), the offenses will not merge." *Johnson* at ¶51; *Craycraft* at ¶11-12; *Roy*, 2011 Ohio 1992 at ¶11.

**[\*P27]** Appellant claims that his convictions for having a weapon while under a disability and felonious assault should be merged. As discussed above, the elements of felonious assault pursuant to R.C. 2903.11(A)(1) and (2) are, "knowingly" "cause serious physical harm to another" and "cause or attempt to cause physical harm to another" "by means of a deadly weapon or dangerous

ordinance." The elements of having weapons while under a disability in violation of R.C. 2923.13(A)(3) are, "knowingly acquire, ha[ve], carry, or use any firearm" and the defendant has been convicted of "any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." "Firearm," as defined by R.C. 2923.11(B)(1) "means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant."

[*P28] The trial court found the charges of having a weapon while under a disability and felonious assault had different focuses. We agree with the trial court in that the offenses should not be merged because each has a separate animus. Although the convictions of felonious assault and having a weapon under a disability could be committed with the same conduct, *Johnson* clearly states that offenses should not be merged when those offenses have two separate animi. Id. at ¶51. An inquiry into the animus of the crime looks to the defendant's purpose or immediate motive for engaging in the criminal conduct. *State v. Logan* (1979), 60 Ohio St.2d 126, 131, 397 N.E.2d 1345. In this case, the record shows that appellant committed a felonious assault and had possession of the gun while under a disability. Thus, the convictions of felonious assault and having a weapon while under a disability should not be merged because appellant made a conscious and separate choice to possess a firearm and a conscious and separate choice to shoot Stiehl and Waver with the firearm. The Second and Fifth Districts have also taken this approach when presented with a conviction involving a firearm that includes a conviction for having a weapon while under a disability. The Second District reasoned that the felonious assault and having a weapon while under a disability convictions should not merge because the animus of having a weapon while under a disability is the "conscious choice to possess a weapon. Felonious assault requires a conscious choice to attack someone using a weapon." *State v. Elder*, Richland App. No. 2011-CA-00058, 2011 Ohio 4438, ¶7-8. Similarly, the Fifth District found the defendant's carrying a concealed weapon and having a weapon while under a disability convictions were not allied offenses because the defendant acquired the gun sometime before he concealed the weapon and thus each offense was done with a separate and distinct act. *State v. Young*, Montgomery App. No. 23642, 2011 Ohio 747.

[*P29] Thus, the trial court did not err by failing to merge appellant's convictions for having a weapon while under a

> disability and felonious assault stemming from the October 15, 2010 shooting. Appellant's third assignment of error is overruled.

*Dillingham I, supra.*

Under the Double Jeopardy Clause, the determinative question on whether a defendant can be punished multiple times for the same criminal conduct depends on determining the state legislature's intent. In Ohio that intent must be determined by applying both the substantive statute defining the offenses and Ohio Revised Code § 2941.25. In this case, the Twelfth District decided that the offenses of felonious assault and having a weapon while under disability on the facts of this case were committed with a separate animus as to each. To paraphrase the Twelfth District, Dillingham decided to carry the firearm before he shot the two victims; that weapons under disability crime was complete and he could have been convicted of it if he had stopped before shooting. Admittedly, a person must have a firearm in order to shoot someone with it, so Dillingham could not have committed felonious assault in the forms charged without having a firearm, but here the *Blockburger* test comes into play: to be convicted of having a weapon while under disability, it must be shown that one has a particular kind of prior conviction whereas no proof of a prior conviction is needed for a felonious assault conviction.

This Court has no authority to second guess the Twelfth District on the meaning of Ohio Revised Code § 2941.25 as applied to the facts here. The Second Ground for Relief should therefore be dismissed on the merits.


**Ground Three: Denial of New Trial/*Brady v. Maryland* Claim**


In his Third Ground for Relief, Dillingham asserts he is constitutionally entitled to a new trial on the basis of newly-discovered evidence.

Ohio R. Crim. P. 33(B) provides that a motion for new trial in an Ohio criminal case must be filed within fourteen days of the verdict or, if based on newly discovered evidence, within 120 days of the verdict. The Rule recognizes an exception to these time limits:

> If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

A motion for new trial under Crim. R. 33(B) is addressed to the sound discretion of the trial court and will not be reversed on appeal in the absence of an abuse of discretion. *State v. Schiebel,* 55 Ohio St. 3d 71 (1990)(¶ 1 of the syllabus). The Twelfth District considered this claim on appeal from denial of the new trial motion and held:

> **[*P9]** In this case, appellant moved for leave to file a delayed motion for a new trial based upon the newly discovered evidence of statements Kimberly Roberson, a Grub Pub bartender working on the night of the shooting, made to police. This motion was filed outside the 120-day period set forth in Crim.R. 33(B) and, therefore, appellant was required to demonstrate, by clear and convincing proof, that he was unavoidably prevented from discovering the evidence within the 120-day period. Appellant alleges that he was prevented from discovering Roberson's statements due to prosecutorial misconduct, as the prosecution was aware that police interviewed Roberson but failed to hand over this information in violation of Crim.R. 16(B) and *Brady v. Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

> **[*P10]** However, as previously determined in *Dillingham I*, the prosecution had no duty to hand over any information regarding Roberson because her statements were not "material" and it was "not reasonably probable" that the results of appellant's trial would have been different had these statements been admitted or had Roberson testified. *Dillingham I* at ¶ 12-18 [referring to its decision on the post-conviction relief appeal, labeled *Dillingham II* in this Report].

> **[*P11]** Furthermore, appellant admitted in his affidavit in support

of his motion for leave to file a delayed motion for new trial that, prior to trial, he was made aware that Roberson was at the Grub Pub at the time of the shooting and believed she could have identified another person as the shooter. However, appellant claims, without providing a reason, that he was unable to locate Roberson—even though he knew her place of employment—for nearly ten months.

**[\*P12]** Therefore, for the foregoing reasons, we find that appellant failed to meet his burden of establishing by clear and convincing proof that the evidence was undiscoverable within 120 days. The trial court did not err in denying appellant's motion for leave to file a delayed motion for a new trial. Accordingly, appellant's sole assignment of error addressing Case No. CA2012-02-042 is overruled.

*Dillingham III*, 2013-Ohio-2050.

There is no federal constitutional right to a new trial in a criminal case. As Dillingham puts it in his Traverse, "[t]he issue her [sic] is whether the Petitioner's rights to a fair trial and due process constitutional rights were violated absent the affidavit/testimony of Kimberly Roberson." (Doc. No. 18, PageID 878.) Dillingham received one fair trial. If he had offered Roberson's testimony[3] at that trial and it had been excluded, he would perhaps have an argument that he had been denied the constitutional right to present a defense. See *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973). The Supreme Court has never held that the Due Process Clause requires a State to provide a second trial to present new evidence.

Nor is there a constitutional due process right to have a state court judge not abuse her or his discretion. To put it another way, a claim of state court abuse of discretion is not reviewable in habeas corpus. *Stanford v. Parker,* 266 F.3d 442 (6th Cir. 2001), *citing Sinistaj v. Burt*, 66 F.3d 804 (6th Cir. 1995).

In addition to asserting this is not a constitutional matter, Respondent also asserts the

---

[3] But not the affidavit. Affidavits are classic hearsay – out of court statements offered to prove the truth of their contents – and they are excludable on that basis.

claim is procedurally defaulted. The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

Examination of the Twelfth District's analysis in *Dillingham III* supports the procedural default defense. Ohio has a rule that newly-discovered evidence must be presented within 120 days of verdict unless a defendant can show that he was "unavoidably prevented from discovering the evidence" within that time. The Twelfth District applied this rule to Dillingham and concluded he had not shown he was unavoidably prevented: he had known of Roberson's identity at the time of the crime and he never showed why he could not have found her earlier than ten months after trial. *Dillingham III*, 2013-Ohio-2050, at ¶ 11. Dillingham has not shown or even attempted to show that this conclusion by the court of appeals is an unreasonable

determination of the facts in light of the evidence before the trial court. See 28 U.S.C. § 2254(d)(2).

Dillingham puts his claim in a different way by asserting prosecutorial misconduct in the State's withholding police interviews with Kimberly Roberson. That does state a claim of deprivation of constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963). The State has a duty to produce exculpatory evidence in a criminal case. If the State withholds evidence and it is material, the conviction must be reversed. *Brady, supra.* "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 683 (1985). "The proper *Brady* inquiry is whether the cumulative effect of the withheld evidence leads us to conclude that there is a reasonable probability that the result of the trial would have been different." *Apanovitch v. Bobby*, 648 F.3d 434, 441 (6th Cir. 2011), *citing Doan v. Carter*, 548 F.3d 449, 460 (6th Cir. 2008).

The Twelfth District considered the *Brady* claim in *Dillingham II* and again in *Dillingham III*. In the first of these opinions, it held as follows:

### First Assignment of Error

**[\*P5]** In his first assignment of error, appellant essentially contends that his petition for postconviction relief should have been granted on the basis of prosecutorial misconduct, as the state failed to hand over exculpatory evidence. Specifically, appellant argues that the state violated Crim.R. 16(B) by failing to disclose the statements made by Kimberly Roberson to police regarding the shooting at the Grub Pub. [Footnote omitted.]

**[\*P6]** Roberson was a bartender at the Grub Pub working on the night of the shooting. According to appellant, Roberson was much closer to the location of the shooting than the witnesses who testified and had been interviewed by police twice regarding the

shooting. Appellant argues that, had Roberson's statements to police been disclosed by the state, appellant would have been exonerated. In support of his assertions, appellant attaches an affidavit from Roberson which states that she was interviewed by police twice regarding the shooting and that she "could not at any time positively identify that [the shooter] was [appellant]."

[*P7] Petitions for postconviction relief are governed by R.C. 2953.21, which states, in pertinent part:

> (A)(1) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.

[*P8] A postconviction proceeding is not an appeal of a criminal conviction, but a collateral civil attack on a criminal judgment. *State v. Calhoun*, 86 Ohio St.3d 279, 281, 1999 Ohio 102, 714 N.E.2d 905; *State v. Bell*, 12th Dist. No. CA2001-08-197, 2002 Ohio 1341, ¶ 5. Under R.C. 2953.21, a criminal defendant challenging his conviction through a postconviction relief petition is not automatically entitled to a hearing. *Calhoun* at 282; *State v. Hicks*, 12th Dist. No. CA2004-07-170, 2005 Ohio 1237, ¶ 9. A trial court properly denies a postconviction relief petition without a hearing if the supporting affidavits, the documentary evidence, the files, and the records of the case do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. *Hicks* at ¶ 9; *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). The decision to grant or deny an evidentiary hearing is left to the sound discretion of the trial court. *Hicks* at ¶ 9; *Calhoun* at 284.

[*P9] As an initial matter, we find that the trial court did not err in denying appellant's petition for postconviction relief because the petition is barred by the doctrine of res judicata. "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was

raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Franklin*, 12th Dist. No. CA2002-07-183, 2003 Ohio 1770, ¶ 11; *State v. Szefcyk*, 77 Ohio St.3d 93, 96, 1996 Ohio 337, 671 N.E.2d 233. A trial court may dismiss a postconviction petition on the basis of the doctrine of res judicata. *State v. Lindsey*, 12th Dist. No. CA2002-02-002, 2003 Ohio 811, ¶ 21; *State v. Perry*, 10 Ohio St.2d 175, 179, 226 N.E.2d 104 (1967).

[**\*P10**] Here, appellant fails to identify any reason why his claim of prosecutorial misconduct could not have been raised on direct appeal. From the record, it is clear that appellant knew who Roberson was and knew that she was working on the night of the shooting prior to filing his direct appeal. Furthermore, the affidavit of Roberson attached to appellant's brief, and previously filed with the trial court, is not dated. Therefore, it is not clear when the affidavit was created and if appellant learned of this information after filing his direct appeal. Consequently, without clear evidence outside the record to support his argument, appellant's petition for postconviction relief on the basis of prosecutorial misconduct is barred by res judicata.

[**\*P11**] However, even if res judicata did not apply here, the trial court still properly denied appellant's petition, as Roberson's statements to the police were not material or favorable to appellant.

[**\*P12**] Crim.R. 16(B) provides, in pertinent part:

> Upon receipt of written demand for discovery by the defendant, * * * the prosecuting attorney shall provide copies or photographs, or permit counsel for the defendant to copy or photograph, the following items related to the particular case indictment, information, or complaint, and which are material to the preparation of defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provision of this rule:

> (5) Any evidence favorable to the defendant and material to guilt or punishment;

[**\*P13**] Further, pursuant to *Brady v. Maryland*, suppression by the prosecution of evidence that is favorable to the accused and

material either to guilt or to punishment is a violation of due process. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). "Evidence suppressed by the prosecution is 'material' within the meaning of *Brady* only if there exists a 'reasonable probability' that the result of the trial would have been different had the evidence been disclosed to the defense." *State v. LaMar*, 95 Ohio St.3d 181, 2002 Ohio 2128, 767 N.E.2d 166, citing *Kyles v. Whitley*, 514 U.S. 419, 433-434, 115 S.Ct. 1555, 131 L. Ed. 2d 490 (1995). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.*, quoting *Kyles* at 434.

[*P14] Here, Roberson states in her affidavit that she was interviewed on two occasions regarding the shooting at the Grub Pub. On both occasions, Roberson was asked if appellant was the shooter and stated, "I could not at any time positively identify that it was [appellant]." Appellant argues that Roberson's testimony at the bench trial would have exonerated him, as Roberson was much closer to the shooter than any of the witnesses who did testify. Because the prosecutor failed to hand over this favorable evidence, appellant argues that the prosecutor's conduct was prejudicial and prevented a fair trial.

[*P15] We find that it is not reasonably probable that the results of the trial would have been different had this statement been admitted or had Roberson testified. Rather, as Roberson's affidavit provides no direct contradiction to the testimony heard at trial, it is clear that appellant received a fair trial resulting in a verdict worthy of confidence.

[*P16] At appellant's trial, both victims testified, stating that they could not make an identification of the shooter. *Dillingham I* at ¶ 14. However, additional witnesses testified, including two police officers and the nighttime manager working at the Grub Pub on the night of the shooting, who were able to identify appellant as the shooter based upon their knowledge of appellant, his stature and gait, and his automobile. *Id.* at ¶ 13-16. In his defense, appellant called his nephew to the stand, who testified that the shooter was wearing different clothing than that of appellant. *Id.* at ¶ 17. However, after viewing photographic stills of the video surveillance tapes, appellant's nephew identified appellant as the shooter—although he later recanted this testimony. *Id.*

[*P17] Based upon this evidence, we cannot say that a reasonable

probability exists that had Roberson's statements been disclosed to the defense, the result of appellant's trial would have been different. On the contrary, Roberson's statements would have been unhelpful to the fact-finder, as neither eliminating appellant as the shooter, nor identifying a different individual as the shooter. Additionally, we note that Roberson avers in her affidavit that she was "never asked to sign any statements regarding the shooting." Therefore, it is questionable whether the prosecution actually had anything to disclose.

[*P18] For the foregoing reasons, we find that the trial court did not err in denying appellant's petition for postconviction relief on the basis of prosecutorial misconduct. Accordingly, appellant's first assignment of error is overruled.

*Dillingham II*, 2012-Ohio-5841. These conclusions were incorporated in the decision in *Dillingham III*, 2013-Ohio-2050, at ¶ 10.

This Court can find no basis on which to disagree with the Twelfth District.

First of all, the record shows that Dillingham had and filed the Roberson affidavit at the time of direct appeal and had not received any statements she made to the police. Therefore, the court of appeals, found the *Brady* claim could have been raised on direct appeal but was not. Ohio has a rule that claims which can be brought on direct appeal but which are omitted are thereafter barred by *res judicata. State v. Perry*, 10 Ohio St. 2d 175 (1967). Ohio's doctrine of *res judicata* in criminal cases enunciated *Perry*, is an adequate and independent state ground. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Second, Dillingham offers no reasonable basis for concluding Roberson's statements are *Brady* material. Even assuming the statements say the same as what is in the affidavit, all that says is that Roberson could not positively identify Dillingham as the shooter. She does not

identify anyone else as the shooter nor does she swear that it positively was not Dillingham. Given the evidence at trial, Roberson's statements to the police as she recounts them in her affidavit are not *Brady* material or, to put it more accurately, the Twelfth District's determination that they are not *Brady* material is not an objectively unreasonable application of *Brady*.

`       To the extent the Twelfth District found a procedural default, Dillingham attempts to excuse that default by claiming actual innocence (Traverse. Doc. No. 18, PageID 883).   The Roberson affidavit is, however, not sufficient proof of actual innocence rising to the quality demanded by the standard for such evidence in  *Schlup v. Delo*, 513 U.S. 298 (1995). See *House v Bell*, 547 U.S. 518, 538 (2006)  (emphasizing that the *Schlup* standard is "demanding" and seldom met).

Ground Three for Relief should therefore be dismissed with prejudice.


**Ground Four:  Ineffective Assistance of Trial Counsel**


In his Fourth Ground for Relief, Dillingham claims he received ineffective assistance of trial counsel because his trial attorney did not call Roberson as a witness.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a

defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Respondent asserts Dillingham's ineffective assistance of trial counsel claim relating to Roberson as a potential witness is procedurally defaulted because it could have been but was not presented on direct appeal (Return, Doc. No. 12, PageID 96-100). Respondent also asserts procedural default from failure to timely appeal to the Ohio Supreme Court. *Id.* at PageID 101-05.

Dillingham responds that the Roberson affidavit was outside the record and therefore could not have been raised on direct appeal (Traverse, Doc. No. 18, PageID 882-83). He also asserts that he did appeal to the Ohio Supreme Court and is thus not barred by the asserted failure to do so. *Id.* at PageID 884.

The Twelfth District expressly held that the Roberson affidavit was available in the record at the time of direct appeal. *Dillingham II*, 2012-Ohio-5841, at ¶ 10. Dillingham has not rebutted those factual findings or their legal significance, to wit, that presenting the ineffective assistance of trial counsel claim as well as the *Brady* claim in post-conviction is barred by *res judicata*. All he does is assert that it was outside the record without dealing with the specific facts, cited by the court of appeals, that show it was available.

Moreover, Dillingham does nothing to rebut the conclusion that he procedurally defaulted by not appealing to the Ohio Supreme Court within the time allowed for an appeal. The Sixth Circuit has held that 45-day deadline for such an appeal is an adequate and independent state ground for decision. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004). Thus on both of these bases the Fourth Ground for Relief is procedurally defaulted.

Alternatively, the Fourth Ground for Relief is without merit. The Twelfth District considered the merits of this claim on Dillingham's appeal from denial of his post-conviction petition and held:

> **Second Assignment of Error**
>
> **[*P19]** In his second assignment of error, appellant generally asserts that his appellate counsel rendered ineffective assistance in failing to argue that his trial counsel was ineffective. Essentially, appellant argues that his trial counsel was ineffective in failing to (1) interview Roberson, (2) acquire discoverable evidence regarding Roberson from the prosecution, and (3) call Roberson as a witness at trial. Appellant then states that his appellate counsel was ineffective in failing to argue these issues on appeal.

**[\*P2O]** "To establish a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's actions were outside the wide range of professionally competent assistance, and that prejudice resulted by reason of counsel's actions." *State v. Ullman*, 12th Dist. No. CA2002-10-110, 2003 Ohio 4003, ¶ 43, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984). A counsel's performance will not be deemed ineffective unless the appellant demonstrates that "counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different." (Internal quotation omitted.) *Id.; Strickland* at 688; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989). "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome of the proceeding.'" *State v. Fields*, 102 Ohio App.3d 284, 656 N.E.2d 1383 (12th Dist.1995), quoting *Strickland* at 694.

**[\*P21]** As to appellant's argument that his trial counsel failed to interview Roberson, he presents no evidence in support of this claim. However, even if appellant presented evidence that his trial counsel failed to interview Roberson, there is no indication that such an omission was prejudicial to appellant. Had Roberson testified in accordance with her affidavit, her testimony would be that she could not at any time positively identify appellant as the shooter. This testimony would not have unequivocally exonerated appellant of all guilt. Therefore, appellant's argument is unpersuasive.

**[\*P22]** In turning to appellant's argument that trial counsel should have obtained information regarding Roberson from the prosecution, we have already determined that the state was not required to disclose any information it may have had regarding Roberson because this information was not favorable to appellant. [FN 2 We further note that the prosecution was not required to disclose information regarding Roberson because she was not called as a witness or reasonably anticipated to be called as a rebuttal witness. Crim.R. 16(B)(7).As such, appellant's trial counsel was not ineffective in failing to gain this information.

**[\*P23]** Finally, we turn to appellant's argument that his trial counsel was ineffective in failing to call Roberson as a witness. A counsel's "decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing

court." *State v. Mundt*, 115 Ohio St.3d 22, 2007 Ohio 4836, ¶ 156, 873 N.E.2d 828. Moreover, there is no evidence that Roberson's testimony would have altered the outcome of appellant's bench trial. Consequently, we cannot say that appellant's trial counsel was ineffective in failing to call Roberson as a witness.

[*P24] As we have determined that appellant's trial counsel's conduct was not ineffective, it logically follows that his appellate counsel was not ineffective in failing to raise an ineffective assistance of trial counsel argument. Accordingly, appellant's second assignment of error is overruled.

*Dillingham II*, 2012-Ohio-5841.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Here the Twelfth District applied the correct federal constitutional standard adopted in *Strickland, supra,* and Dillingham has not shown how that decision is objectively unreasonable. Thus the Fourth Ground for Relief should also be dismissed on the merits.

**Conclusion**

In accordance with the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify

to the Sixth Circuit that any appeal would be objectively frivolous.


June 6, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).


**The attention of the parties is directed to this Magistrate Judge's Standing Order on form which provides in pertinent part "All references to the record in this Court must be to the tiled document by title, docket number, and PageID reference. (E.g., Defendants' Motion to Dismiss. Doc. No. 27. PageID _ .) Filings which do not conform are subject to striking.**