IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

CHARLES DILLINGHAM,

        Petitioner,   :        Case No. 1:13-cv-468

  - vs -                               Chief Judge Susan J. Dlott
                                       Magistrate Judge Michael R. Merz

WARDEN, CHILLICOTHE CORRECTIONAL
INSTITUTION,
                              :
        Respondent.

## SECOND SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Supplemental Objections (Doc. No. 39) to the Magistrate Judge's Supplemental Report and Recommendations recommending the Petition in this case be dismissed with prejudice (the "Supplemental Report," Doc. No. 37). The Magistrate Judge had previously filed a Report and Recommendations to the same effect (the "Report," Doc. No. 33). Chief Judge Dlott has recommitted the case for reconsideration in light of the Objections (Doc. No. 40).

**Ground One:  Sufficiency of the Evidence**

In his First Ground for Relief, Dillingham asserts he was convicted on insufficient evidence of his identity as the person who did the shooting at the Grub Pub. The controlling constitutional authority is *Jackson v. Virginia*, 443 U.S. 307 (1979), on which the Twelfth District Court of Appeals relied in rejecting this claim.

1

Dillingham's first set of Objections (Doc. No. 35) complained that neither the court of appeals nor the Report recited the cross-examination testimony of Natasha Ness, a bartender at the location where the shooting occurred, in which her identification testimony is impeached. The Supplemental Report noted that the weight to be given to the impeachment was a matter for the trial judge who had determined it did not prevent a finding of guilt.  The Supplemental Report noted:

> The quoted cross-examination does not consist of her withdrawal or repudiation of her direct examination, nor is the direct testimony so inherently incredible that no reasonable fact finder could believe it.  The fact that witnesses could not identify Dillingham from the surveillance tapes alone does not negate their ability to identify him based on other acquaintance.  Ness had known him for years.  Detective Erb had spent considerable time with him on the night of the shooting before it happened.  Taken together, this evidence is constitutionally sufficient.

(Supplemental Report, Doc. No. 37, PageID 1095.)

Dillingham now objects that Ms. Ness was not impeached, but "completely recanted her claims that she could indentify [sic] the Petitioner as the shooter in her testimony." (Supplemental Objections, Doc. No.39, PageID 1104, citing Trial Tr., Doc. No. 16-1, PageID 789-90).  At that point in the transcript, Ms. Ness is being asked on cross-examination if she can identify Dillingham from a view of his back in the video surveillance tape and she says no.  Immediately thereafter she testifies "I can tell you when they walk in the door that that's Chuck." *Id.*

This is in no way a recantation of Ms. Ness's identification of Dillingham.  Rather, it is an admission that she cannot identify him from the video.  As the Report notes, Ness had known Dillingham for years (Report, Doc. No. 37, PageID 1095).  She even calls him by his nickname, Chuck, in the cross-examination testimony Dillingham cites.

In ruling on the relevant assignment of error, the Twelfth District Court of Appeals acknowledged that Ness could not identify Dillingham from the video alone and would not have been able to identify him at all except for the fact that he had been in the bar just before the shooting and she had known him as a customer for the four years she had been a bartender there. *State v. Dillingham*, 2011-Ohio-6348, ¶ 15 (12th Dist. 2011).

Furthermore, the identification did not rest on Ness's testimony alone.  Although the two victims had been shot in the back and could not see who shot them, Hamilton Police Officer Fryman, who had questioned Dillingham at length earlier that evening, identified him from the video, as did Hamilton Detective Patrick Erb.  *Id.*  at ¶¶ 13, 16.

This case was tried to the bench without a jury.  Of course, a Common Pleas Judge would apply the same standard for deciding an element of the charged offense as he would have instructed a jury to do.  Once the trier of fact has applied that standard and it has been upheld on appeal, a federal habeas court must give that determination double deference under the AEDPA. *Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam)*; *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). The question before the state courts is not whether the evidence has eliminated all doubt, but whether there is any reasonable doubt left.  Once the state courts have answered that question to their satisfaction, the question for the habeas court under *Jackson, supra,* is whether **any** reasonable juror could have reached that conclusion.  If so, the claim fails, as it does here.  The First Ground for Relief should be dismissed with prejudice.

**Ground Two:  Double Jeopardy**

In his Second Ground for Relief, Dillingham contends his conviction for both felonious assault and having a weapon while under a disability is precluded by the Double Jeopardy Clause because Ohio Rev. Code § 2941.25 makes these two offenses allied offenses of similar import for which only one conviction can be obtained.  The Report found that the Twelfth District's analysis of this claim was consistent with the governing Ohio Supreme Court precedent, *State v. Johnson,* 128 Ohio St.3d 153 (2010),  and not contrary to nor an unreasonable application of any clearly established United States Supreme Court law.  Accordingly the Report recommended dismissing the Second Ground with prejudice.  The Supplemental Report reaffirmed that analysis under both Ohio Revised Code § 2941.25 and the Double Jeopardy Clause (Supplemental Report, Doc. No. 37, PageID 1096-97).

Dillingham objects to the Magistrate Judge's Double Jeopardy analysis, noting the Sixth Circuit's decision in *Volpe v. Trim*, 708 F.3d  688 (6th Cir. 2013).  Dillingham is correct that *Volpe* applies here, but it is no help to him.  The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other."  *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly

indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.") The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself. *Volpe*, 708 F.3d at 696, *citing Albernaz*. "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Id.* at 697*, citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989). Here the Twelfth District determined that the two offenses in question had different elements and were committed with a separate animus for each offense. *State v. Dillingham, supra*, ¶ 28.

Dillingham objects to the finding of separate animi by the Twelfth District and criticizes the Supplemental Report for paraphrasing that finding as "Here the Twelfth District found that Dillingham chose to carry a firearm sometime earlier on the day of the shooting and then, having the gun, decided to use it to shoot the two victims." (Supplemental Report, Doc. No. 37, PageID 1096.) Dillingham objects that there is no evidence in the record that he carried a gun earlier that day (Supplemental Objections, Doc. No. 39, PageID 1108). "Earlier" in this context does not mean an extended period of time; it merely means that Dillingham made the decision to possess the gun before he actually fired it at the backs of his two victims. There is no doubt that the two victims were shot in the back, that they were the victims of felonious assault with a firearm. Once the trial court concluded that Dillingham was the shooter, the only other element it has to find on the firearms count was that he was under a disability. To put it another way, even if Dillingham had walked into the parking lot and seen two people he wanted to shoot and then – miraculously – found the required firearm on the ground, the weapons felony would have been completed in the instant he picked up the gun, before he fired it. Under *Johnson*, *supra*, it is completely possible to commit the offense of having a weapon under disability without

5

committing the offense of felonious assault.  Therefore, there was no Double Jeopardy violation and Ground Two should be dismissed with prejudice.

**Ground Three:  Denial of New Trial/*Brady v. Maryland* Claim**

In his Third Ground for Relief, Dillingham asserts he is constitutionally entitled to a new trial on the basis of newly discovered evidence which was improperly withheld from him under *Brady v. Maryland*, 373 U.S. 83 (1963), to wit a police report of a statement taken from Kimberly Roberson, another employee of the bar.  He also presented in post-conviction an affidavit taken from her.

The Report found that this claim was procedurally defaulted because the Twelfth District had invoked Ohio's criminal *res judicata* rule against Dillingham and, in any event, he had not demonstrated any *Brady* violation (Report, Doc. No. 33, PageID 1069-78).  The Supplemental Report confirmed this analysis (Supplemental Report, Doc. No. 37, PageID 1097-98.)

Dillingham now argues that his appellate counsel was ineffective for not raising this claim on direct appeal (Supplemental Objections, Doc. No. 39, PageID 1110).  The Twelfth District considered and rejected this claim on Dillingham's 26(B) Application for Reopening. *State v. Dillingham*, Case No. CA2011-03-043 (12th Dist. May 1, 2012)(unreported; copy at Return, Doc. No. 12-1, Ex. 19, PageID 272).  Dillingham has not shown how this particular decision was contrary to or an objectively unreasonable application of clearly established Supreme Court law.  Instead, he argues that somehow honoring this position deprives him of his "due process right to appeal from an error of counsel to argue the issue on appeal." (Supplemental Objections, Doc. No. 39, PageID 1110.)  On the contrary, Ohio provides a

remedy for ineffective assistance of appellate counsel – an application for reopening under Ohio R. App. P. 26(B).  But there is no due process right to raise a new argument on direct appeal after having had a direct appeal from which the issue was omitted.  This would amount to saying a defendant always has a right to re-argue his appeal.  On the contrary, the due process right is to effective assistance of counsel on appeal and one only gets to raise new issues if one has been deprived of effective assistance on the first appeal of right.

For reasons given in the Supplemental Report, Ms. Roberson's statement that she cannot positively identify anyone as the shooter is not exculpatory of Dillingham, much less sufficient new evidence of actual innocence to satisfy the *Schlup* actual innocence "gateway" past Dillingham's procedural default.

Dillingham complains of the Magistrate Judge's denial of an evidentiary hearing on the basis of *Cullen v. Pinholster,* 563 U.S. ___, 131 S. Ct. 1388 (2011)(Supplemental Objections, Doc. No. 39, PageID 1112).  He relies on Justice Sotomayor's dissent in *Pinholster* which suggested that the rule would not apply to a *Brady* claim.  However persuasive Justice Sotomayor's dissent might be, it is the majority opinion which controls.

Ground Three for Relief should be dismissed with prejudice.

**Ground Four:  Ineffective Assistance of Trial Counsel**

In his Fourth Ground for Relief, Dillingham claims he received ineffective assistance of trial counsel because his trial attorney did not call Roberson as a witness.  The Report rejected this Ground for Relief both as procedurally defaulted on two bases and on the merits. The

Twelfth District Court of Appeals had reached the same conclusion. The Supplemental Report confirmed the original conclusion.

Dillingham objects that the court of appeals used a different standard from the Supreme Court's standard in *Strickland v. Washington*, 466 U.S. 668 (1984)(Supplemental Objections, Doc. No. 39, PageID 1113). This claim was heard by the Twelfth District on appeal from denial of the post-conviction petition. The court of appeals acknowledged *Strickland* as the governing precedent *State v. Dillingham,* 2012-Ohio-5841 at ¶ 20 (12th Dist. 2012). That court found "[h]ad Roberson testified in accordance with her affidavit, her testimony would be that she could not at any time positively identify appellant as the shooter. This testimony would not have unequivocally exonerated appellant of all guilt." *Id.* at ¶ 21. Dillingham notes that the probability of prejudice required under *Strickland* is a sufficient probability of impact on the outcome to undermine confidence in the result. The Twelfth District's opinion must be read as saying that, because her testimony did not unequivocally exonerate Dillingham, its absence does not undermine confidence in the result. The Twelfth District's decision is not contrary to *Strickland*; it is merely a shorthand way of saying that her testimony is not enough to undermine confidence.

Dillingham attempts to overcome the Report's conclusion of procedural default of this claim for not appealing to the Ohio Supreme Court by claiming that he did appeal to that court and thereby exhausted his state court remedies (Supplemental Objections, Doc. No. 39, PageID 1114). The Respondent's defense on this claim is not lack of exhaustion, but procedural default. And, as the Report notes, Dillingham did not timely appeal to the Supreme Court, making this claim defaulted under *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004).

Ground Four should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is again respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

September 2, 2014.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).